IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JERI GARDNER                                    Case No. 3:14-cv-00373-MA

               Plaintiff,                      OPINION AND ORDER

    v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

             Defendant.

RORY LINERUD
Linerud Law Firm
P.O. Box 1105
Salem, OR 97308

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

ERIN F. HIGHLAND
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Jeri Gardner seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g). For the reasons that follow, this court reverses the decision of the Commissioner and remands this matter pursuant to sentence four of 42 U.S.C. §405(g) for further administrative proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB on January 27, 2010, alleging disability beginning March 12, 2003, due to neck and shoulder injury, spinal stenosis, attention deficit hyperactivity disorder (ADHD), depression, anxiety, irritable bowel, and acid reflux. Plaintiff meets the insured status requirements for a DIB application through September 30, 2014.

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on August 16, 2011, at which plaintiff appeared with her attorney and testified. Plaintiff appeared and testified at a supplemental hearing held on April 26, 2012. A vocational expert, Paul K. Morrison, also appeared at the second hearing and testified. On May 21, 2012, the ALJ issued an unfavorable decision. The Appeals Council denied

plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1967, plaintiff was 45 years old on the date of the ALJ's unfavorable decision. Plaintiff has a high school education. Plaintiff has past relevant work as a retail clerk, materials handler, laborer, house cleaner, and day care provider.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since March 12, 2009. At step two, the ALJ found that plaintiff had the following severe impairments: affective disorder; anxiety disorder; degenerative disc disease of the cervical spine; fibromyalgia; left shoulder degenerative joint disease; and obesity. At step three, the ALJ found that plaintiff's

impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform less than a full range of light work as defined in 20 C.F.R. 404.1567(b) with additional limitations. Plaintiff is limited to occasional lifting 20 pounds above shoulder level with the dominant upper extremity and occasional pushing and pulling with the dominant upper extremity. Plaintiff should have no contact with the general public, only occasional interaction with coworkers, and is limited to simple repetitive tasks with a predictable routine.

At step four, the ALJ found plaintiff unable to perform any past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as laundry folder, paper sorter, and small products assembler. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from March 12, 2003, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate

plaintiff's credibility; (2) the ALJ failed to properly evaluate plaintiff's RFC; and (3) the ALJ erred at Step Five.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

I.   **ALJ Did not Err in Evaluating Plaintiff's Credibility**

A.   **Standards**

To determine whether a claimant's testimony regarding
subjective pain or symptoms is credible, an ALJ must perform two
stages of analysis. 20 C.F.R. § 404.12629. The first stage is a
threshold test in which the claimant must produce objective medical
evidence of an underlying impairment that could reasonably be
expected to produce the symptoms alleged. *Molina v. Astrue*, 674
F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d
1035, 1039 (9th Cir. 2008). At the second stage of the credibility
analysis, absent affirmative evidence of malingering, the ALJ must
provide clear and convincing reasons for discrediting the
claimant's testimony regarding the severity of the symptoms.
*Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1161
(9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th
Cir. 2007).

The ALJ must make findings that are sufficiently specific to
permit the reviewing court to conclude that the ALJ did not
arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*,
763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039.
Factors the ALJ may consider when making such credibility
determinations include the objective medical evidence, the
claimant's treatment history, the claimant's daily activities,
inconsistencies in testimony, effectiveness or adverse side effects

of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

**B.   Analysis**

At the August 16, 2011 hearing, plaintiff testified that she is unable to stand for long periods at a time. Plaintiff testified that she can sit for ten to fifteen minutes before needing to stand and walk for ten to fifteen minutes. Tr. 10. Plaintiff also testified that she experiences pain all over her body including her back, hips, legs, and shoulders. Tr. 14.

At the April 26, 2012 hearing, plaintiff testified that she injured her shoulder blade and trapezius muscles at work and was not able to return to this job. Tr. 52. Plaintiff also testified that she has difficulty lifting, pushing, or pulling excessive weight. *Id.* Plaintiff testified that she takes Vicodin for her pain along with muscle relaxers. *Id.* Plaintiff also testified that she has difficulty focusing and is easily distracted. Tr. 55. Plaintiff further testified that she experiences numbness and tingling in her hands and arms; she drops items and has difficulty picking up objects. Tr. 56.

In a March 3, 2010 Adult Function Report, plaintiff described a typical day as completing household tasks, spending time on the computer, attending doctors' appointments, and cooking meals for her children. Tr. 226. Plaintiff noted that she cares for her daughter, including cleaning, preparing meals and completing

laundry. *Id.* Plaintiff indicated that she performs household chores such as vacuuming, cleaning bathrooms, and cleaning dishes. Tr. 228. Plaintiff noted that she goes shopping three times a week for 30-40 minutes each time. Tr. 229. Plaintiff further noted that she can walk three to four blocks before needing to rest. Tr. 231.

In the decision, the ALJ concluded that plaintiff has medically determinable impairments that could reasonably be expected to produce some symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible.

Contrary to plaintiff's assertion, the ALJ provided two clear and convincing reasons, citing specific record evidence, which undermine her subjective complaints. As discussed below, the ALJ also provided one unconvincing reason for discrediting plaintiff's allegations of pain. However, the other two reasons adequately support the ALJ's credibility determination.

## 1. inconsistent with objective medical evidence

The ALJ specifically found plaintiff's subjective allegations of debilitating pain inconsistent with the medical record. Tr. 419. When the claimant's own medical record undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Morgan v. Commissioner Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999);

*Carmickle*, 533 F.3d at 1161. The ALJ's findings are supported by substantial evidence in the record.

In the decision, the ALJ noted that plaintiff's laboratory imaging is inconsistent with her allegations of pain. Tr. 39. For example, plaintiff's December 2008 magnetic resonance imaging (MRI) of her cervical spine revealed mild left C4-5 uncovertebral hypertrophy with mild to moderate left foraminal stenosis. Tr. 259. Plaintiff's July 2009 electromyography (EMG) test revealed no evidence of carpal tunnel syndrome or neuropathy in the upper extremities. Tr. 268. An April 2009 MRI of plaintiff's left foot revealed mild first MTP joint degenerative joint disease with an otherwise negative scan. Tr. 309.

Additionally, the ALJ noted that as of February 2009, plaintiff's treating physician opined that plaintiff is capable of regular duty work. Tr. 254. Treating physician, Jeffrey Gerry, M.D., indicated normal motor and sensory examinations in both upper extremities with intact cervical range of motion. Tr. 254. Based on this examination, Dr. Gerry released plaintiff to regular duty work without any restrictions. Tr. 274. Another examining physician similarly opined that plaintiff can perform work without any restrictions in August 2009. Tr. 274.

Moreover, plaintiff's examinations indicated relatively normal objective findings. For example, as the ALJ noted, treating physician Maura O'Leary, M.D., noted intact strength in both upper

extremities and decreased range of motion in the left shoulder. Tr. 39, 365. Dr. O'Leary indicated that plaintiff self-diagnosed fibromyalgia. Tr. 488. Dr. O'Leary's examination findings have been relatively normal. *See generally*, Tr. 488, 490, 923, 495, 498, 500. In fact, Dr. O'Leary opined that plaintiff's EMG and MRI of her neck have revealed no major findings. Tr. 500.

In short, the ALJ reasonably concluded that the objective medical evidence in the record is inconsistent with the degree of plaintiff's subjective symptoms and appropriately discounted her credibility on this basis.

## 2. activities of daily living (ADLs)

As the ALJ correctly noted, plaintiff's variety of activities of daily living are inconsistent with the level of disability she alleges. For example, the ALJ noted that plaintiff appears to perform all activities of daily living. Specifically, plaintiff noted in her Adult Function Report that she takes care of her daughter, including cleaning and preparing meals for her. Tr. 226. The ALJ also noted that plaintiff serves as a primary caregiver for her partner.

Plaintiff argues that the ALJ erred in finding plaintiff not credible based on the inconsistency between her allegations and her ADLs, specifically taking care of her partner. Plaintiff further argues that the record does not provide sufficient information of how plaintiff cared for her partner. I disagree.

10 - OPINION AND ORDER

In this case, the ALJ relied on significant evidence in the
record as to how plaintiff cared for her partner and her child. As
plaintiff testified at both hearings, she is the *primary* caregiver
for her partner, who is confined to a wheelchair and suffers from
significant medical issues including congestive heart failure. Tr.
9, 50, 57. Plaintiff also testified at both hearings that her
partner receives social security disability. Tr. 9,50. Although
plaintiff testified at the first hearing that she and her partner
"sort of care for each other," the record provides further evidence
that plaintiff is primarily caring for her partner without much
assistance in return. For example, the ALJ noted that plaintiff's
treating podiatrist noted in July 2009 that although plaintiff
reported pain in her foot, plaintiff also discussed how she has
been on her feet cleaning the house, shopping, and maintaining
family responsibilities. Tr. 273. Her podiatrist further noted that
plaintiff "states that she cannot work 8 hours on the foot but I
would take from the conversation that she is on it everyday, likely
equal to 8 hours or more." Tr. 273. Moreover, plaintiff's treating
physician, Dr. O'Leary opined in an April 2010 assessment that
plaintiff is stressed by her role as a primary caregiver for her
partner. Tr. 396. Plaintiff's extensive activities in caring for
her partner are inconsistent with her allegations of pain and
mental symptoms. *See Batson,* 359 F.3d at 1193 (as long as the ALJ's
interpretation of the evidence is supported by inferences

11 - OPINION AND ORDER

reasonably drawn from the record, the court may not question the ALJ's interpretation").

Based on this significant evidence in the record, I conclude that the ALJ properly discredited plaintiff's testimony because her level of activity is inconsistent with the degree of impairment that she alleges. *See Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010)(inconsistencies between self-reported symptoms and activities supported adverse credibility finding).

### 3. Unemployment Benefits

Finally, the ALJ discredited plaintiff's allegations on the basis of her receiving unemployment benefits from 2009 until July 2011. Tr. 38-39. Specifically, the ALJ noted that plaintiff's receipt of unemployment benefits indicates that she is able to work, which is inconsistent with plaintiff's allegations of debilitating symptoms. Tr. 39.

Plaintiff argues that the ALJ erred because plaintiff never held herself out as able to work full time. Plaintiff further argues that because Oregon law allows individuals to receive unemployment benefits if they are able to perform "some work," her receipt of unemployment benefits is not inconsistent with her allegation of disabling symptoms.[1] I agree.

---

[1] Plaintiff also argues that the ALJ's rationale is contrary to Social Security regulation 20 C.F.R. § 416.210(a), which instructs claimants to apply for all other benefits for which he or she may be eligible. It is unnecessary to address this argument as I concluded that the ALJ committed an error in

12 - OPINION AND ORDER

The Ninth Circuit has held that an ALJ's reliance on a claimant's receipt of unemployment benefits is improper unless the record establishes whether the claimant held herself out as being available for full-time work. *See Carmickle*, 533 F.3d at 1162. Moreover, in Oregon, to be eligible for unemployment benefits the claimant must, among other things, be "able to work . . . available for work, and . . . actively seeking and unable to obtain suitable work." Or. Rev. Stat. § 657.155(c). Here, the record does not establish that plaintiff held herself out as capable of full time employment on her application for unemployment benefits. Moreover, the ability to perform "some work" is not inconsistent with plaintiff's allegation of disabling symptoms. Thus, the ALJ erred in relying on plaintiff's receipt of unemployment benefits as a reason to discredit her testimony.

In conclusion, although the ALJ's credibility reasoning does contain one error, this error does not invalidate the ALJ's overall adverse credibility finding. The ALJ's remaining reasons, when taken together, constitute clear and convincing reasons, supported by substantial evidence to discount plaintiff's testimony. Therefore, I conclude that the ALJ's error is harmless. "So long as there remains 'substantial evidence supporting the ALJ's conclusions on...credibility' and the error 'does not negate the

---

relying on plaintiff's receipt of unemployment benefits to discredit her testimony.

validity of the ALJ's ultimate [credibility] conclusion,' such [error] is deemed harmless and does not warrant reversal." *Carmickle*, 533 F.3d at 1162 (quoting *Batson*, 359 F.3d at 1195-97); *Stout v. Commissioner Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## II. <ins>The ALJ Did Not Err in Assessing the RFC</ins>

An ALJ's RFC need only incorporate credible limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005)(the ALJ is only required to identify specific, credible limitations in the RFC; "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

Plaintiff argues that the ALJ erred by failing to cite to medical evidence for plaintiff's various limitations and to obtain additional medical opinions to formulate the RFC. Plaintiff also argues that the ALJ failed to comply with Social Security Ruling (SSR) 96-8p. Both arguments are without merit.

In determining the RFC, the ALJ must consider limitations imposed by all of the claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96-8p, *available*

at 1996 WL 374184. However, the RFC determination is not a medical issue. The final responsibility for this determination is within the province of the Commissioner. SSR 96-5p at *2, *available at* 1996 WL 374183.

Contrary to plaintiff's argument, the ALJ relied on medical evidence in the record in formulating the RFC finding. For example, the ALJ cited to plaintiff's cervical MRI of December 2008, which revealed mild left C4-5 uncovertebral hypertrophy. Tr. 39. The ALJ noted that plaintiff suffered two on-the-job injuries: right upper trapezius and left foot contusion. *Id.* The ALJ also noted that plaintiff recovered from both injuries, and by August 2009, plaintiff was released to work with no restrictions. *Id.* To be sure, plaintiff does not challenge the ALJ's evaluation of the medical evidence.

In the decision, the ALJ noted that the medical evidence supports some limitations related to degenerative disc disease and degenerative joint disease of the left shoulder. Tr. 39. For example, December 2009, Dr. O'Leary noted deceased range of motion and tenderness to palpation of the left shoulder. Tr. 420. Dr. O'Leary also noted tenderness with full strength in the right shoulder. Furthermore, the ALJ noted that plaintiff's July 2009 EMG study revealed no evidence of carpal tunnel syndrome. Based on this medical evidence, the ALJ found plaintiff had restrictions in lifting weight, ten pounds frequently and 20 pounds occasionally,

and that plaintiff can only lift up to 20 pounds occasionally overhead with her dominant arm and only occasionally push and pull with her dominant arm. Tr. 38.

In contrast, non-examining physician, Neal Berner, M.D., opined in an July 12, 2010 assessment that plaintiff had no severe physical impairments at step two; the ALJ properly disregarded Dr. Berner's opinion and noted that recent medical evidence in the record supports a finding of severe physical impairments that result in some functional limitations. Tr. 40, 82. Indeed, medical evidence in the record supports the ALJ's rational interpretation.

In assessing plaintiff's mental limitations, the ALJ relied on two medical opinions in the record. The ALJ adopted and gave great weight to the opinion of non-examining physician Megan D. Nicoloff, Psy.D. Tr. 40. In a July 14, 2010 Mental RFC Assessment Form, Dr. Nicoloff found that plaintiff is able to perform simple routine tasks as well as occasionally carry out more complex tasks and should not have close contact with the public or coworkers. Tr. 86. In finding that plaintiff can only perform simple repetitive tasks and have no contact with the public, the ALJ found plaintiff slightly more limited "in light of new mental health records," and the medical record supports this conclusion. Tr. 40; *see* Tr. 467, 472, 477.

The ALJ also gave great weight to the opinion of Dr. O'Leary and found that this opinion is consistent with a limitation to

simple work with no public contact and only occasional interaction with coworkers. Tr. 40. In an April 2010 assessment, Dr. O'Leary noted that plaintiff had good hygiene and a tidy appearance. Dr. O'Leary opined that plaintiff can perform all ADLs but that her trips outside the house are affected by her depression. Tr. 395. Dr. O'Leary also opined that plaintiff is able to maintain social relationships with her family but tries to avoid interaction with other people. *Id.* To be sure, plaintiff does not challenge the great weight given to the opinions of Drs. Nicoloff or O'Leary.

As noted by the ALJ, plaintiff's mental status examinations further support the ALJ's mental limitations in the RFC finding. For example, in a December 2009 examination, plaintiff was noted to have intact memory, attention, and concentration. Tr. 362. At a February 2010 psychiatric evaluation, examining physician, Jane Gregory Payne, M.D., noted mild psychomotor retardation, depressed mood, dysthymic affect but linear and logical thought process and normal speech. Tr. 399. Dr. Payne diagnosed plaintiff with major depressive disorder, recurrent, severe, without psychotic symptoms, dysthymic disorder, and post-traumatic stress disorder and assessed a Global Assessment Function (GAF) score of 55.[2] Tr. 400.

---

[2] A GAF of 51–60 indicates moderate symptoms (flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV), p. 31–34 (4th ed. 2000).

Plaintiff's mental status examinations are consistent with the ALJ's assessed mental limitations. *See generally* Tr. 412, 418, 422, 432, 490.

Moreover, the ALJ provided a sufficient narrative discussion of the medical evidence in formulating the RFC finding; however, he was not required to "discuss every piece of evidence" in the record. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Contrary to plaintiff's assertion, there is no legal requirement in SSR 96-8p or the social security regulations that requires an ALJ to formulate a RFC finding entirely based on a medical opinion. *See* SSR 96-8p; 20 C.F.R. § 404.1545.

Furthermore, plaintiff does not cite to any medical evidence in the record that suggests plaintiff's limitations are greater than the ALJ identified. As discussed previously, the ALJ considered plaintiff's testimony with respect to the RFC finding and properly discredited her allegations. After careful review of the record, I conclude that the medical evidence does not demonstrate that plaintiff is more limited than the RFC finding. Indeed, the limitations assessed by the ALJ were greater than the opinions of non-examining physicians. In this regard, the ALJ appears to have given plaintiff some benefit of the doubt concerning her functional limitations.

Plaintiff further appears to argue that the ALJ failed to develop the record with to respect to medical opinions regarding

18 - OPINION AND ORDER

plaintiff's functional limitations. "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen*, 80 F.3d at 1288)). After a review of the record, I conclude that there are no ambiguities or inadequacies that would trigger the ALJ's duty to develop the record.

Finally, plaintiff argues that the ALJ failed to consider the impacts of her obesity in the RFC finding and specify the restrictions attributed to obesity as required by SSR 02-1p. Again, plaintiff's argument misses the mark.

SSR 02-1p specifically states that "[an ALJ] may not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity of functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record." SSR 02-1p, *available at* 2012 WL 34686281, *6 (Sept. 12, 2002).

With respect to plaintiff's obesity, the ALJ appropriately considered any possible limitations resulting from this impairment in the RFC finding. At step two, the ALJ found plaintiff's obesity as a severe impairment. Tr. 36. In terms of her RFC finding, the ALJ found that "evidence supports a finding that the claimant has

some limitations related to degenerative disc disease, degenerative joint disease of the left shoulder, fibromyalgia, and obesity." Tr. 39. To be sure, plaintiff has not identified any information from a treatment provider describing how her obesity limits her functioning.

Indeed, the medical record is silent as to how plaintiff's functional limitations are exacerbated by her obesity. A careful review of the medical record shows that no treatment provider recommended aggressive treatment of plaintiff's obesity beyond simply encouraging weight loss. *See* Tr. 402, 404, 488, 500. In fact, no treatment provider actually diagnosed plaintiff with obesity. During the period, plaintiff's weight fluctuated on average between 170 and 195 pounds. *See generally* Tr. 420-500. Although plaintiff alleges that her back and fibromyalgia pain are disabling, plaintiff did not testify to any pain or limitations resulting from her obesity. Tr. 53, 56-57. *See Burch,* 400 F.3d at 683 (plaintiff has burden to provide evidence establishing how her obesity limits her functioning).

In sum, I conclude the ALJ did not err in evaluating plaintiff's obesity, and the ALJ's RFC finding is supported by substantial evidence in the record as a whole. *Burch,* 400 F.3d at 684.

III. **ALJ Did Not Err in Evaluating VE Testimony**

At step five, "the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100.

At the hearing, the ALJ posed a hypothetical to the VE incorporating all the limitations of the RFC finding. The VE testified that given the hypothetical, there are still other jobs in the national economy that an individual could perform. Specifically, the VE outlined the following jobs: laundry folder, light work with an skill vocational preparation level (SVP) of 2 (12,000 jobs nationally and 900 jobs in the state of Oregon); paper sorter/recycler, light work with an SVP of 2 (86,000 jobs nationally and 3,200 jobs in the State of Oregon); small products assembler, light work with an SVP of 2 (592,000 jobs nationally and 4,300 jobs in the State of Oregon). Tr. 65.

Plaintiff argues that the ALJ erroneously relied on the VE's testimony because the three jobs outlined by the VE require frequent reaching as listed in the Dictionary of Occupational Titles (DOT), which is inconsistent with the ALJ's hypothetical. Plaintiff also contends that the VE's testimony is inconsistent with the DOT, and the VE does not account for the inconsistency. I

disagree with plaintiff's first argument; nevertheless, I find the ALJ erred at Step Five.

Plaintiff erroneously assumes occasional lifting 20 pounds overhead is the same as a limitation to occasional reaching overhead. The ALJ did not find any limitations with respect to reaching with either upper extremity in the RFC finding or include such limitations in the hypothetical. The ALJ is required to pose a hypothetical composed of only limitations that the ALJ found credible and supported by substantial evidence in the record. *Bayliss,* 427 F.3d at 1217; *see also Magallanes v. Brown*, 881 F.2d 747, 756-57 (9th Cir. 1989)(holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record). As discussed above, the ALJ's RFC finding is supported by substantial evidence in the record.

As to plaintiff's second argument, the record is unclear whether the VE's testimony was consistent with the Dictionary of Occupational Titles. "SSR 00-4p unambiguously provides that '[when a [vocational expert]. . . provides evidence about the requirements of a job or occupation, the adjudicator has *an affirmative responsibility* to ask about any possible conflict between that [VE] . . . evidence and information provided in the [DOT].' SSR 00-4p further provides that the adjudicator 'will ask' the VE 'if evidence he or she has provided' is consistent with the [DOT] and obtain a reasonable explanation for any apparent conflict."

22 - OPINION AND ORDER

*Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007)(holding that because the ALJ failed to ask the VE about possible conflicts with the DOT, court cannot determine if ALJ properly relied on VE's testimony).

In this case, as in *Massachi*, the ALJ failed to ask the VE if his testimony was consistent with the DOT and if necessary, to provide sufficient rationale for the discrepancy. Consequently, this court is unable to determine if the ALJ properly relied on the VE's testimony. The ALJ also erred at step five by not requesting DOT codes from the VE for the jobs outlined. *See Johnson v. Shalala,* 60F.3d 1428, 1432 (9th Cir. 1995)(ALJ must identify specific jobs in the national economy that plaintiff can perform at step five). Because substantial evidence does not support the ALJ's step five finding, the ALJ's errors at step five are not harmless and support reversal of the decision. *See Stout v. Commissioner,* 454 F.3d 1050, 1055 (9th Cir. 2006)(an ALJ's error is harmless only if it is inconsequential to the ultimate nondisability determination).

## IV.  Credit-as-True

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award

of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed. *Vasquez*, 572 F.3d at 593.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. *Connett v. Barnhart*, 340 F.3d 873, 876 (9th Cir. 2003). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010). Moreover, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Commissioner of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

On this record, I conclude that an outstanding issue must be resolved before a final determination of disability can be made. The ALJ determined that plaintiff could perform other work in the

24 - OPINION AND ORDER

national economy at Step Five and relied on VE testimony. As discussed above, the ALJ failed to inquire whether the VE's testimony was consistent with the DOT in accordance with SSR 00-4p. The ALJ also failed to identify specific jobs by their DOT codes. Thus, I conclude the ALJ could not properly rely on the VE's testimony, and the Step Five finding is not supported by substantial evidence. Accordingly, proper remedy is to remand for further administrative proceedings. Thus, I decline to award immediate award of benefits because the record as a whole creates serious doubt as to whether plaintiff is, in fact, disabled. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Based on the foregoing, I exercise discretion under *Connett* and conclude a remand for further proceedings is required to permit the ALJ to further evaluate whether plaintiff is capable of performing other work that exists in significant numbers in the national economy, with assistance of a vocational expert if necessary; inquire as to whether the VE's testimony is consistent with the DOT; and include DOT codes for any jobs identified at Step Five.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and this proceeding is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this __6__ day of April, 2015.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge

26 - OPINION AND ORDER